IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | )
TECHNOLOGY LICENSING | )
CORPORATION, | )
| )
          Plaintiff, | )   09 C 820
  v. | )
| )   Judge Virginia M. Kendall
HARRIS CORPORATION, | )
| )
          Defendant. |

## MEMORANDUM OPINION AND ORDER

This is a patent infringement case. Plaintiff Technology Licensing Corporation ("TLC") alleges that Defendant Harris Corporation infringes five of TLC's patents. Harris denies infringement and seeks summary judgment in its favor based on two separate license and settlement agreements. But there are genuine issues of material fact as to whether those agreements apply in this case. The first agreement requires Harris to mark licensed products with appropriate references to the licensed patents. Harris has not done so because it does not believe that the asserted patents cover its products. The second agreement covers products listed by model number on a website as of April 30, 2004. But there is a question as to whether the second agreement covers products that now bear the model numbers listed on the website as of April 30, 2004. Therefore, this Court denies Harris's motion for summary judgment.

## FACTS

As an initial matter, TLC's opposition brief does not comply with Local Rule 5.2(c) because it is not double-spaced and the type is less than 12 points. This Court views TLC's noncompliance with Local Rule 5.2 as a blatant attempt to evade the page limit set forth in Local

Rule 7.1. What is more, TLC's deception was unnecessary because TLC could have sought leave to exceed the page limit. Nevertheless, this Court has fully considered TLC's opposition brief. This Court warns counsel for TLC that it will strike any documents subsequently filed in this case that do not comply with the Local Rules.

The following facts are undisputed unless otherwise indicated. TLC is a Nevada corporation with its principle place of business in Carson City, Nevada. (Dkt. No. 132 (Under Seal), Pl.'s Resp. to Def.'s 56.1 Stmt. at ¶ 1.) Harris is a Delaware corporation with its principal place of business in Melbourne, Florida. (*Id.* at ¶ 2.) Harris is an international communications and information technology company serving government and commercial markets in more than one-hundred twenty-five countries. (*Id.*)

Although TLC objects to statements such as the preceding one as unreliable because it relies on declarations that the declarants did not author, this objection alone does not place the fact at issue. Declarations are not unreliable simply because a lawyer drafted them. Lawyers typically draft affidavits, responses to interrogatories, and other written statements related to a lawsuit. *See Sullivan v. Conway*, 157 F.3d 1092, 1096-97 (7th Cir. 1998) ("Affidavits are normally as here written by lawyers . . . ."); *see also Reynolds v. Jamison*, 488 F.3d 756, 769 (7th Cir. 2007) (Rovner, J., concurring in part and dissenting in part) ("Affidavits, responses to interrogatories, and other written statements are typically drafted by lawyers and by their nature are self-serving."). The question is typically whether the written statements are credible in view of prior sworn testimony. If not, then courts may disregard the written statements when deciding a motion for summary judgment. *See Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 623 (7th Cir. 2002) ("Affidavits, though signed under oath by the affiant, are typically and here written by the affiant's lawyer, and when offered to contradict the affiant's deposition are so

2

lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy."); *see also Sullivan*, 157 F.3d at 1097 (explaining that allowing statements written by lawyers to "correct" prior testimony impairs the fact-finding process).

Here, TLC has not identified any prior testimony or other evidence that contradicts the declarations offered by Harris. Moreover, TLC deposed each of the challenged declarants on their respective declarations. TLC's examination revealed only that the declarants did not write their respective declarations. Declarant Todd Roth explained that he did not actually type his declaration but the declaration contains his words. (Dkt. No. 134-2 (Under Seal), Roth Dep. Tr. 21:9-20.) Declarant Bogdan Szmajda explained that he reviewed and corrected his declaration several times before signing it. (Dkt. No. 134-3 (Under Seal), Szmajda Dep. Tr. 11:7-13.) Declarant David Guerrero explained that he reviewed and approved the content of his declaration, which reflected what he told counsel. (Dkt. No. 134-3 (Under Seal), Guerrero Dep. Tr. 18:5-8.) Even though counsel drafted them, each declarant's testimony indicates that his declaration reflects his personal knowledge. Consequently, there must be some other indication that the declarations offered by Harris are unreliable. To the extent that TLC has not done so and has not otherwise placed a declarant's statement at issue, this Court deems the fact admitted for purposes of this motion.

A. **TLC's Infringement Allegations**

TLC alleges that Harris infringes U.S. Patent Nos. RE40,411E ("the '411 Patent"), RE40,412 ("the '412 Patent"), 5,920,842 ("the '842 Patent"), 5,550594 ("the '594 Patent"), and 8,072,539 ("the '539 Patent"). (Pl.'s Resp. to Def.'s 56.1 Stmt. at ¶ 4.) TLC alleges that a

number of Harris's products infringe the asserted patents. (*Id.* at ¶¶ 6-9.) Harris denies infringement. (*See* Dkt. No. 86.)

### B. The Leitch Agreement

Leitch Technology Corporation was a Canadian corporation that designed and developed broadcast television equipment and video post-production products and technologies including routers and distribution equipment, signal processing, signal management and monitoring, servers and storage area networks, branding software and post-production editing systems. (Pl.'s Resp. to Def.'s 56.1 Stmt. at ¶ 10.) Leitch entered a license agreement (the "Leitch Agreement") with TLC and Third-Party Defendants J. Carl Cooper and Pixel Instruments Corporation on August 31, 2000. (*Id.* at ¶ 11.) The Leitch Agreement granted Leitch "a worldwide, nonexclusive right to utilize the claimed subject matter of the Licensed Patents to make, have made, sell, use, lease, or otherwise deal in Leitch Licensed Products." (Dkt. No. 122-2 (Under Seal), Ex. B to Lippetz Decl. at § 2.1.) Harris completed its acquisition of the entire Leitch business on October 25, 2005. (*Id.* at 30.)

Each of the patents asserted against Harris are Licensed Patents under the Leitch Agreement. (Pl.'s Resp. to Def.'s 56.1 Stmt. at ¶¶ 4, 18-21.) The Leitch Agreement requires the licensee to "cause all products delivered after the date of this Agreement which licensee believes, to the best of its knowledge, may incorporate claimed subject matter of the Licensed Patents or the Covenanted Patents, to be permanently and legibly marked with the appropriate references to the Licensed Patents . . . ." (Dkt. No. 141-1 (Under Seal), Def.'s Resp. to Pl.'s 56.1 Stmt. at ¶ 1.) Harris has not marked any of the accused products as such because it does not believe the Licensed Patents cover any of Harris's products. (*Id.* at ¶¶ 3-4.)

C.   **The Videotek Agreement**

Videotek, Inc. was a privately owned corporation that designed, developed, and manufactured video and audio equipment, including test and measurement equipment, for the broadcast, production, and post-production, cable, satellite, webcasting, education, and government markets. (Pl.'s Resp. to Def.'s 56.1 Stmt. at ¶ 22.) Videotek entered a settlement and license agreement (the "Videotek Agreement") with the Plaintiff on December 31, 2003. (*Id.* at ¶ 23.) The Videotek Agreement states:

> TLC hereby covenants and agrees with Videotek that neither it nor any person directly or indirectly controlled by it or claiming through it will bring suit or otherwise assert a claim against Videotek or its subsidiaries or any other distributor, customer or end-user of any of Videotek's products before any court or administrative agency in any country of the world, based on or arising out of any U.S. Patent it presently has the rights to enforce or assert or any patent it may come to have the rights to assert or enforce, in connection with the making, having made, using, selling, offering to sell or importation of any Videotek product used in any field other than the Consumer field of use and specifically listed by model number on Videotek's web site www.videotek.com, as of April 30, 2004, providing however that this covenant shall not apply to integrated circuits or chip sets which are sold individually or not otherwise incorporated into a finished product, but shall apply to finished products incorporating integrated circuits or chip sets.

(*Id.* at ¶ 24.) The Videotek Agreement allows Videotek's "transfer of all of the rights granted in this Agreement to a successor entity that acquires all of the applicable business to which the Cooper Video Patents relate, provided the transfer is limited to the past, present and future business activities of the transferred business only and not to any past, present or future business activities of the acquiring company." (*Id.* at ¶ 25.) Leitch completed its acquisition of the entire Videotek business on May 17, 2004. (*Id.* at ¶ 29.) Harris subsequently acquired Leitch. (*Id.* at ¶ 30.)

The "Cooper Video Patents" include the '594 Patent. (*Id.* at ¶ 26.) TLC alleges that Harris's VTM-2000, VTM-2400, and VTM-4100 products infringe the '594 Patent. (*Id.* at ¶ 7.) Videotek's web site listed model numbers VTM-2000, VTM-2400, and VTM-4100 as of April 30, 2004. (*Id.* at ¶ 34.) But it is unclear whether Videotek manufactured and sold model numbers VTM-2000, VTM-2400, and VTM-4100 as of April 30, 2004. (Def.'s Resp. to Pl.'s 56.1 Stmt. at ¶ 12.) According to Declarant Guerrero, "there could have been a box modified as a prototype sitting in a lab somewhere." (*Id.*) Harris did not issue a press release introducing its "Innovative Videotek VTM Series Test and Measurement Console" until February 6, 2006. (*Id.* at ¶ 9.)

## STANDARD OF REVIEW

"Summary judgment is proper when, viewing all facts and inferences in favor of the nonmoving party, no genuine dispute as to material fact exists, and the moving party is entitled to judgment as a matter of law." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Whether a fact is material depends on the underlying substantive law that governs the dispute. *Id.* And a genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). Summary judgment is proper when there are no genuine issues of material fact as to the interpretation of a license agreement. *India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 658 (7th Cir. 2010). Any ambiguity with respect to a matter material to the agreement precludes summary judgment. *Id.*

## DISCUSSION

**I.  There are genuine issues of material fact concerning whether the Leitch Agreement covers the accused products.**

"A licensee, of course, has an affirmative defense to a claim of patent infringement." *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995). A patent license is a

contract generally governed by state law. *Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1328 (Fed. Cir. 2002). In Illinois, a party asserting a breach of contract claim must show that a contract exists, that it has performed under the contract, that the other party has breached the contract, and damages as a result of the other party's breach. *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 626 (7th Cir. 2013).

Here, Harris contends that it acquired Leitch and, therefore, it holds a license to the asserted patents under the Leitch Agreement. TLC counters that Harris has not complied with the terms of the Leitch Agreement and, consequently, the Leitch Agreement does not apply to the accused products. For example, TLC argues that Harris breached the Leitch Agreement because it has not marked any of the accused products. In response, Harris claims that it did not have to mark any of the accused products because it does not believe that any of the accused products incorporated the claimed subject matter of the asserted patents.

Harris's belief undermines its reliance on the Leitch Agreement. Harris has not conceded that its accused products infringe the asserted patents. Instead, Harris relies on TLC's infringement contentions to establish that the accused products fall under the Leitch Agreement. By doing so, Harris is able to maintain its non-infringement position and argue that it did not have to mark any of its accused products under the Leitch Agreement. But Harris cannot have it both ways. Either the Leitch Agreement covers the accused products or it does not. At this point in the litigation, Harris must either concede infringement and take its chances on summary judgment under the Leitch Agreement or maintain its non-infringement position and lose on summary judgment. Harris has chosen the latter. Therefore, this Court denies Harris's motion for summary judgment because Harris's non-infringement position and its belief that it did not have

to mark the accused products under the Leitch Agreement create genuine issues of material fact as to whether the Leitch Agreement applies to the accused products.

**II.     There are genuine issues of material fact as to whether the Videotek Agreement applies to Harris's current VTM-2000, VTM-2400, and VTM-4100 products.**

The Videotek Agreement states that TLC will not assert the patents covered by the agreement against any product "in connection with the making, having made, using, selling, offering to sell or importation of any Videotek product used in any field other than the Consumer field of use and specifically listed by model number on Videotek's web site www.videotek.com as of April 30, 2004." (Dkt. No. 122-3 (Under Seal), Ex. C to Lippetz Decl. at 6.) The parties agree that Videotek's website listed model numbers VTM-2000, VTM-2400, and VTM-4100 as of April 30, 2004. But TLC contends that the Videotek Agreement only covers products in use as of that date and that the VTM-2000, VTM-2400, and VTM-4100 products were not in use as of that date. Harris counters that "used in any field other than the Consumer field of use" in the Videotek Agreement refers to the limited rights TLC held in the patents covered by the Videotek Agreement. According to Harris, this field of use restriction is one of two separate restrictions; the second restriction is that Videotek list the model number on its website as of April 30, 2004.

This Court must determine whether the Videotek Agreement is ambiguous. *Harmon v. Gordon*, 712 F.3d 1044, 1051 (7th Cir. 2013) ("Whether a contract is ambiguous is a question of law for the court."). To do so, this Court must consider the Videotek Agreement as a whole and construe it in a manner that reflects the intentions of the parties. *See id.* at 1050. The parties entered the Videotek Agreement in the context of litigation between TLC and Videotek. (Dkt. No. 122-3 (Under Seal), Ex. C to Lippetz Decl. at 1.) TLC granted Videotek "a fully paid-up, worldwide, irrevocable, non-exclusive, non-transferable, retroactive and future license to make,

use, sell, export, import, have made or offer for sale products covered by any unexpired claim . . . . in any field of use other than the Consumer field . . . for which products have been identified as infringing products . . . ." (*Id.* at 4.) TLC also agreed not to sue Videotek "in connection with the making, having made, using, selling, offering to sell or importation of any Videotek product used in any field other than the Consumer field of use and specifically listed by model number on Videotek's web site www.videotek.com as of April 30, 2004." (*Id.* at 6.) The language used in the license differs from that in the covenant not to sue. The former explicitly refers to past and future actions and does not denote tense when referring to infringing acts ("make, use, sell") or to the Consumer field of use. The latter denotes tense when referring to infringing acts ("making, having made, using") and refers to products "used in any field." The use of conjugated verbs in the covenant not to sue leaves open whether the parties intended for this provision to cover then existing and used products as TLC suggests or any products bearing the model numbers listed on the website as of April 30, 2004, as Harris suggests. Consequently, the covenant not to sue is ambiguous because it is subject to two reasonable interpretations. *See PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 893 (7th Cir. 2004) ("A contract provision is ambiguous only if it is subject to more than one reasonable interpretation.").

Because it is ambiguous as to what products the covenant not to sue covers, interpretation of the Videotek Agreement is a question of fact for the jury. *See Harmon*, 712 F.3d at 1050 ("Under Illinois law, when a court decides that a contract is ambiguous, its interpretation generally becomes a question of fact for the jury.") This is particularly true here, where TLC has raised genuine issues of material fact as to whether Videotek manufactured and sold model numbers VTM-2000, VTM-2400, and VTM-4100 as of April 30, 2004, and a former Videotek employee testified that there could have been a prototype of one of these products in a laboratory

somewhere at the time. The parties will have to present evidence at trial that establishes whether the parties to the Videotek Agreement intended for the agreement to cover all products that bear model numbers VTM-2000, VTM-2400, and VTM-4100 or only those in existence as of April 30, 2004. To be clear, Harris has the burden of establishing its affirmative defense. *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001) ("The burden of establishing an affirmative defense is on the party raising the defense.") Consequently, Harris must show that the Videotek Agreement covers its VTM-2000, VTM-2400, and VTM-4100 products. TLC may introduce evidence that undermines Harris's reading of the Videotek Agreement. If Harris meets its burden concerning the Videotek Agreement, TLC must show that the Videotek Agreement is no longer valid or enforceable as it bears the burden of establishing breach. *See DeliverMed Holdings, LLC*, 734 F.3d at 626; *see also Frolow v. Wilson Sporting Goods Co.*, 710 F.3d 1303, 1312 (Fed. Cir. 2013) (explaining that party asserting breach has burden with respect to that breach under applicable state law). Harris may counter any showing by TLC by introducing evidence that the Videotek Agreement is valid and enforceable. For these reasons, this Court denies Harris's motion for summary judgment related to the Videotek Agreement.

## CONCLUSION

For the reasons stated herein, this Court denies Harris's motion for summary judgment.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: December 9, 2013